Opinion by
Beaver, J.,
In an action of ejectment in the court of common pleas of Lancaster county, iii which the appellant here was the plaintiff and the predecessor in title of the appellee was the defendant, a jury found the following verdict: “That they find in favor of the plaintiff, upon condition that the plaintiff release the land by quit-claim deed, upon the payment of $75.00 to plaintiff, and costs of suit, defendant to remove the cornice of his house so far as it laps over property of plaintiff.”
In pursuance of this verdict, the appellant made a quit-claim deed to the appellee, reciting the conveyance of the title of his predecessor to him and the verdict in the action of ejectment, conveying a “ strip of land three (3) inches wide, more or less, and thirty feet in depth of that width, which was in the possession of said W. C. Enck, but which by the verdict of the jury in the case of William C. Evans v. W. C. Enck, in the Court of Common Pleas of Lancaster County of August Term, 1893, No. 32, was to be released by quit-claim deed to said W. C. Enck, conditioned upon the payment of seventy-five dollars and costs of said suit, and the removal of the cornice of said W. C. Enck’s *612 (now belonging to James C. Brobst, M. D., grantee herein) property, so far as it laps over the property of said William C. Evans, grantor herein.”
This conveyance was coupled with the condition: “It is hereby agreed that the grantee shall remove the cornice so far as it laps over the property of grantors.”
After repeated notices, according to the testimony, by the appellant to the appellee, the latter failed to remove the cornice. The former undertook to do so, as it is practically admitted he had the right to do. In doing this, however, the plaintiff claims that he removed the overlapping cornice which was on the front or south side and on the rear or north side of the building, beyond the line dividing the two properties, and what is called a “patch-board” on the east side of the building, which was within the line on the plaintiff’s side.
There were two principal questions of fact involved. The one was that the appellant had removed more of the cornice than overlapped upon his premises and also the patch-board which was entirely upon the premises of the appellee, and, secondly, that, by doing so, the building, which had been protected by the patch-board, was permanently injured, and that, in order to make it good or restore it to its former condition, the cost would amount to $350 or $360. The appellant, on the other hand, claimed that he had removed no more than he had a right to remove and that the injury to the building was not occasioned by the removal of the patch-board, but that the roof and the eastern wall had leaked previously, so that the injury was not occasioned by the removal of the patch-board but by a long-continued deterioration occasioned by leakage which the appellee had vainly endeavored to stop. As to both of these questions there was contradictory testimony.
It is not often that the mental processes of a jury can be clearly seen in a verdict. Here, however, they are quite plainly apparent. Instead of $350 or $360, which was the practically uncontradicted testimony of the plaintiff’s witnesses that it would cost to restore the building to a safe and habitable condition, the jury found for the plaintiff, the appellee here, in the sum of $50.00. It is manifest, therefore, that as to *613 the first fact they found in favor of the plaintiff, namely, that the patch-board, which was from an inch and a half to an inch and three-quarters thick, did not overlap upon the premises of the defendant; but as to the second fact they evidently found in favor of the defendant, namely, that the deterioration in the building was not occasioned by the removal of the patch-board but by previous and long-continued leakage. In addition to the removal of the patch-board, the defendant, the appellant here, had removed the cornice close to the eastern wall of the appellee’s building and, therefore, if the finding of the jury is correct, as we are bound to assume, removed more of the cornice than he was entitled to remove. Although there was no direct evidence as to the amount which it would require to restore that cornice, front and rear, which was shown to have been splintered and somewhat defaced even beyond the eastern fine of the building, and replace the patch-board which had been removed, the jury evidently exercised their common sense as to what would be required to put this cornice and patch-board in good condition, so as to put the building in as good condition up to the line between the properties of the appellant and the appellee as it had been before the removal of the cornice and patch-board made by the plaintiff.
The appellant, in the sixth and seventh assignments, alleges error in the court’s charge, but, inasmuch as the parts of the charge assigned for error are practically in accord with the contention of the appellant here, we cannot see wherein he can consistently charge the court with doing him hurt in any way. In the sixth assignment, he bases his allegation of error upon the following part of the charge: "It is said, because of the taking off of the cornice and the patch-board, the rain penetrated into the building and that the wall was damaged. If that is so, and you find that Evans did what he had no right to do, then you must compensate Brobst in the amount of damages which you will ascertain will restore his property to the condition it was in before Evans did this act. But, if the damages for which he claims cannot be attributed to this cause, but to the defects of the building itself, before anything was done by Evans, that is, if the building leaked and the *614 rains penetrated through the nine-inch wall before, and no more damage was sustained after than before, that is, if the cause was not the taking off of the patch-board and the cutting off of the cornice, but was on account of the inherent defects in the building prior to that time, then, of course, Evans ought not to be called upon to pay damages for what resulted from some other cause than that which is claimed here in this case.” This is precisely what is claimed by the appellant here, and is in every respect in accordance with well-settled principles.
So, in the seventh assignment, it is charged that the court erred in saying: “The plaintiff has said, by some witnesses, that his damages were from $350 to $360. You will take all the evidence into account on this question of damages, and, as I have said before, if what damages there were to the building were not caused by Evans, of course you will not allow Brobst anything on that account.” The verdict of the jury clearly shows that they were of opinion that the damages which would have required $350 to repair were not caused by the removal of the cornice and patch-board and, in that respect, it was entirely in accord with the charge of the court and the contention of the appellant.
As to the admission of the testimony of the several witnesses who testified in regard to the damages, they were subject to cross-examination and their testimony was contradicted by that of the appellant, in which it was attempted to be shown that the damages complained of were not occasioned by the removal of the patch-board but by the inherent defects in the roof and wall of the appellee’s building before the patch-board was removed. We are of opinion that there was no error in the admission of the testimony, and, inasmuch as the appellant’s testimony upon this part of the case was evidently believed by the jury and the verdict was in accordance with that view of the case, there does not seem to be anything of merit in the several assignments of error relating to this subject.
The first assignment alleges error in this portion of the charge of the court: “In case, however, you find that Evans took away a portion of the cornice which was upon the Brobst land and the patch-board upon the Brobst land, then your *615 verdict will be in favor of the plaintiff, and in that event you will ascertain what damages, if any, Brobst has sustained by reason of the act of Evans in this regard.” This was as clear and comprehensive a statement of the whole case as it was possible to make, and was an exact definition of the real issue involved. There was no error whatever, nor an approach to error, in it.
The second relates to the point presented by the defendant' that “ Under the evidence the verdict should be in favor of the defendant.” The case was clearly one for a jury and we can see no error in the admission of testimony or in any portion of the charge of the court, alleged for error, of which the appellant can consistently or rightfully complain.
Judgment affirmed.